# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| TERESA RUSSELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0174-WS-N |
| | ) |
| JUSTIN HENDRIX, etc., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the defendants' motion for summary judgment. (Doc. 46). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 46, 53, 56),[1] and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted.

## BACKGROUND

According to the amended complaint, (Doc. 20), in April 2014 the plaintiff was at the Escambia County probation office with her daughter. As she was leaving, the two defendants arrested her. The defendants, Justin Hetrick[2] and Preston Hill, are sheriff's deputies. The sole remaining count of the complaint alleges that the arrest was unsupported by probable cause and that the defendants used excessive force in executing the arrest, in violation of the plaintiff's Fourth

---

[1] Because the plaintiff filed her brief twice, (Docs. 52, 53), the Court considers only the one more recently filed.

[2] The parties appear to agree that this is the correct name of this defendant. (Doc. 46-1 at 2; Doc. 52 at 2).

and Fourteenth Amendment rights.[3] The defendants are sued exclusively in their individual capacities. (Doc. 20 at 1).

**DISCUSSION**

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); accord *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if

---

[3] The Court previously dismissed all other counts on motion of the defendants. (Doc. 34).

any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

**I. Evidence.**

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the plaintiff's version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the defendants and not in tension with the plaintiff's version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

The plaintiff has presented evidence from herself, from her daughter Angelica Dawson, and from Officer Martesha Lee, a juvenile probation officer. Dawson was transported to the sheriff's office from her school to meet with Lee regarding issues at school. They and the plaintiff met in Lee's office. The plaintiff became upset (mostly at her daughter) and began to talk loudly. Due to the plaintiff's loudness, several deputies arrived at Lee's office, per protocol, to ensure everything was alright. The plaintiff and Dawson left Lee's office to

continue their discussion outside.  As they were headed to the side exit, Hetrick ran up to the plaintiff and told her to get the f--- out of here, that this was a public place and that she was making a scene.  Dawson went out the side door but, as the plaintiff was doing so, Hetrick attempted to trip her.  She told Hetrick that, if he was going to trip her, she would go out the main exit.  Hetrick followed the plaintiff inside, grabbed her by the neck and put her up against a wall, choking her.  The plaintiff turned and asked Hetrick why he was choking her, and he told her she should have gotten the hell out of here while she had the chance.  The plaintiff remembered she had a knife on her person, and she was going to retrieve it but the Lord told her not to do so.  Hetrick kicked the plaintiff in the back of her legs, and she went to her knees.  He then kicked her in the back, and she went prone on the floor.  Hetrick then kneed the plaintiff in the back, and Hill placed his knee on the side of her face.  (Doc. 53 at 1-3; Docs. 53-1, -2, -3).

That is the plaintiff's evidence and, as noted, on motion for summary judgment it is controlling as far as it goes.  The defendants, however, can supplement her evidence with their own, so long as that evidence is consistent with the plaintiff's evidence and the reasonable inferences therefrom.

The plaintiff was so angry that Lee was concerned she would begin fighting her daughter in the office.  (Doc. 46-2 at 59).  She was so loud and angry that multiple officers came to the office door to make sure everyone was alright.  (*Id*. at 31, 66, 72).  The secretary at the front desk heard the plaintiff holler and went to Hetrick's office to inform him of the situation.  (*Id*. at 28-31, 64).  Outside Lee's office, the plaintiff was screaming and hollering and announcing that she had a knife.  (*Id*. at 32, 72).  Hetrick, unsure whether the plaintiff had a knife, pinned the plaintiff's arms against the wall, she facing him.  (*Id*. at 30, 32, 67).  Hetrick told the plaintiff she was under arrest and instructed her to put her hands behind her back.  He tried to turn the plaintiff around to apply handcuffs, but she began to pull or push away from him.  Hetrick at that point put the plaintiff on the ground and handcuffed her.  (*Id*. at 24, 30, 32, 37).

The plaintiff does not address or deny any of this evidence, which is consistent with, but expands upon, her version of events.[4] The defendant's evidence therefore must be taken as uncontroverted and considered along with the plaintiff's evidence in evaluating her claims.

Synthesized, the evidence most favorable to the plaintiff is that she was shouting angrily, to the point Lee feared a physical fight. Hetrick crudely ordered the plaintiff out of the building but she refused to comply, instead turning around and returning to the building's interior. Hetrick followed the plaintiff, grabbed her around the neck, put her against a wall and began choking her. (This was not a literal "choke," in the sense of cutting off air supply, because the plaintiff turned and spoke to Hetrick.) Either at this point or previously, the plaintiff began yelling about having a knife. Hetrick then pinned the plaintiff's arms to the wall, placed her under arrest, and ordered her to turn around. The plaintiff instead pushed or pulled away. Hetrick then kicked the plaintiff in the legs, causing her to go to her knees, and then kicked her in the back, causing her to go to the floor, where Hetrick kneed her in the back and handcuffed her while Hill kneed her in the side of her face.

**II. False Arrest.**

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (internal quotes omitted). However, "[t]he existence of probable cause at the time of arrest ... constitutes an absolute bar to a section 1983 action for false arrest." *Id*. at 1326-27 (internal quotes omitted). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within

---

[4] The defendants also have evidence the plaintiff threatened to cut and kill the m-----f-----s. (Doc. 46-2 at 72-73). Because the plaintiff denies having threatened to cut anyone, (Doc. 53-3 at 4), the Court does not consider the defendants' contrary evidence.

5

their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Id*. at 1327 (internal quotes omitted).

The plaintiff was charged with disorderly conduct, pleaded guilty to that offense, and was placed on probation. (Doc. 46-2 at 49-50). Such a plea may establish probable cause as a matter of law for purposes of a constitutional false arrest claim. *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1320 n.20 (11th Cir. 2017) ("Stephens provided probable cause for his arrest by his nolo contendere plea, which defeated the false-arrest cause of action in his § 1983 case."). To the extent the preclusive effect of a conviction based on a guilty plea depends on whether the state of conviction would recognize it as legally establishing probable cause, *id*. at 1319-20, it seems clear that Alabama would do so. *See Gaddis v. Ledbetter*, 2017 WL 3841935 at *2 (N.D. Ala. 2017) (describing Alabama law regarding this issue). The plaintiff identifies no reason her conviction on guilty plea should not be given preclusive effect.

In any event, it is clear from the evidence that Hetrick observed the plaintiff engage in disorderly conduct as that term is used in the Alabama Criminal Code. *See, e.g., Sterling v. State*, 701 So. 2d 71, 72, 74-75 (Ala. Crim. App. 1997) (where the plaintiff repeatedly asked why his application for a pistol permit had been denied, his voice rising with each iteration, to the point that courthouse workers heard him and stopped their work to see what was happening, the evidence supported a conviction for disorderly conduct under Alabama Code § 13A-11-7(a)(2)). Hetrick therefore possessed probable cause to believe that the plaintiff had committed that offense. The plaintiff offers no argument to the contrary.

Because Hetrick had probable cause to arrest the plaintiff for disorderly conduct, her false arrest claim fails as a matter of law.

### III. Excessive Force.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest … necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (internal quotes omitted). Indeed, "the typical arrest involves some force and injury." *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008) (internal quotes omitted). However, "[a]ny use of force must be reasonable," *Jean-Baptiste*, 627 F.3d at 821, and "[i]t is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006).

The defendants have asserted the affirmative defense of qualified immunity. (Doc. 46-1 at 7). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert International v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). The burden then shifts to the plaintiff to show that the defendant's conduct "violated a clearly established statutory or constitutional right." *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003).

There is no question but that the defendants were acting within the scope of their discretionary authority. "Because making an arrest is within the official responsibilities of a sheriff's deputy, [the defendant] was performing a discretionary function when he arrested [the plaintiff]," allegedly using excessive force in the process. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004); *accord Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) ("[[I]t is clear that [a sheriff's deputy] was acting within the course and scope of his discretionary authority when he arrested [the plaintiff] and transported her to

7

jail."). Because the conduct of which the plaintiff complains occurred in the course of an arrest, the defendants acted within the scope of their discretionary authority. The plaintiff makes no argument to the contrary. *See McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) (where the plaintiff did not dispute that the deputy was acting within his discretionary authority at the time of the arrest, the burden shifted to the plaintiff to overcome the qualified immunity defense). The burden therefore rests on the plaintiff to show that the defendants' conduct violated her clearly established Fourth Amendment rights.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotes omitted). "The salient question … is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). To attain that level, "the right allegedly violated must be established, not as a broad general proposition, … but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle*, 132 S. Ct. at 2094. The law is clearly established if any of three situations exists.

"First, the words of the pertinent federal statute or constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances to overcome qualified immunity, even in the total absence of case law." *Vinyard*, 311 F.3d at 1350 (emphasis omitted). The requisite fair and clear notice can be given without case law only "[i]n some rare cases." *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003). The plaintiff does not assert that the language of the Fourth Amendment, standing alone, made it clear that the defendants' conduct was unconstitutional.

8

"Second, ... some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." *Vinyard*, 311 F.3d at 1351. "For example, if some authoritative judicial decision decides a case by determining that 'X Conduct' is unconstitutional without tying that determination to a particularized set of facts, the decision on 'X Conduct' can be read as having clearly established a constitutional principle: put differently, the precise facts surrounding 'X Conduct' are immaterial to the violation." *Id*. "[I]f a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a government official, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id*. (internal quotes omitted). "[S]uch decisions are rare," and "broad principles of law are generally insufficient to clearly establish constitutional rights." *Corey Airport Services, Inc. v. Decosta*, 587 F.3d 1280, 1287 (11th Cir. 2009).

"Third, [when] the Supreme Court or we, or the pertinent state supreme court has said that 'Y Conduct' is unconstitutional in 'Z Circumstances,'" then if "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar [to those involved in the opinion], the precedent can clearly establish the applicable law." *Vinyard*, 311 F.3d at 1351-52.

When case law is utilized to show that the law was clearly established, the plaintiff must "point to law as interpreted by the Supreme Court [or] the Eleventh Circuit," and such case law must pre-date the challenged conduct. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Moreover, "[t[he law cannot be established by dicta[, which] is particularly unhelpful in qualified immunity cases where we seek to identify clearly established law." *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1342 n.13 (11th Cir. 1998) (internal quotes omitted).

9

When, as here, the defendants have probable cause to arrest, their subjective intent is irrelevant,[5] and the constitutional issue is measured by whether the force employed was "'objectively reasonable' in light of the facts and circumstances [the defendants] faced at the time, 'including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.'" *Reese*, 527 F.3d at 1272 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). These are the factors the plaintiff asks the Court to consider. (Doc. 53 at 3, 5). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. And "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

Because they invoke qualified immunity, it is not enough for the plaintiff to show that the defendants employed unconstitutionally excessive force in effecting her arrest; instead, she must show that pertinent case law "would inevitably lead every reasonable officer in [their] position to conclude the force was unlawful." *Jean-Baptiste*, 627 F.3d at 821 (internal quotes omitted).

Disorderly conduct is a crime "of minor severity." *Vinyard*, 311 F.3d at 1347. However, it is uncontroverted that the plaintiff had just refused an order to leave the building, that she was actively resisting arrest,[6] and that, because she

---

[5] Thus, as the plaintiff concedes, it is "of no moment" whether Hetrick attempted to trip her. (Doc. 53 at 5).

[6] Although the plaintiff's brief announces that she was not resisting arrest, (Doc. 52 at 6), "[s]tatements by counsel in briefs are not evidence." *Travaglio v. American Express Co*., 735 F.3d 1266, 1270 (11th Cir. 2013) (internal quotes omitted). The uncontroverted evidence, as discussed in Part I, is that the plaintiff did resist arrest.

10

angrily insisted she had a knife, she posed an immediate threat to the safety of Hetrick and others in the vicinity. Pinning the plaintiff's arms to the wall would appear to be a reasonable response to the threat she posed, since it temporarily prevented her from retrieving her knife.[7] Kicking the plaintiff in the back of her legs and then in the back would appear to be a reasonable response to the plaintiff's refusal to present her arms for handcuffing, since (as she admits) it caused her to go to her knees and then to the floor, allowing her to be handcuffed and the threat of her retrieving her knife eliminated.[8] And Hill's placing his knee on the plaintiff's face (and Hetrick's placing his knee on her back) would appear to be reasonable, as there is no evidence she was already handcuffed and as she had just claimed to have a knife.[9]

---

[7] *See, e.g., Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007) ("Even if we accept that the threat posed by [the decedent] to [the defendant] was not immediate …, the law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect.").

[8] *See, e.g., Brown v. City of Huntsville*, 608 F.3d 724, 740 (11th Cir. 2010) ("For even minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls."); *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2002) (handcuffing a non-threatening, non-resisting suspect by grabbing his arm, twisting it around his back and jerking it up high to the shoulder is not excessive force); *Nolin v. Isbell*, 207 F.3d 1253, 1255-57 (11th Cir. 2000) (handcuffing a non-resisting, non-threatening suspect by grabbing him from behind by the shoulder and wrist, throwing him against a van several feet away, kneeing him in the back and pushing his head into the side of the van did not constitute excessive force); *Gomez v. United States*, 601 Fed. Appx. 841, 843, 851 (11th Cir. 2015) (handcuffing a non-resisting, non-threatening suspect by grabbing him by the neck, choking him and slamming his head against a vehicle did not constitute excessive force); *Sullivan v. City of Pembroke Pines*, 161 Fed. Appx. 906, 907, 910 (11th Cir. 2006) (handcuffing a suspect by grabbing her arm, pulling her arms behind her back, pushing her to the ground and placing a knee on her back did not constitute excessive force).

[9] "A police officer is entitled to continue his use of force until a suspect thought to be armed is fully secured." *Jean-Baptiste*, 627 F.3d at 821 (internal quotes omitted). *See, e.g., Crosby v. Monroe County*, 394 F.3d 1328, 1334 (11th Cir. 2004) (where the suspect was on the ground but not yet handcuffed and might have had weapons concealed on his person, the defendant did not employ excessive force by putting his foot on the suspect's face).

Viewing the evidence in the light most favorable to her, Hetrick grabbed the plaintiff by the neck and choked her before she resisted arrest or declared that she had a knife (but just after she refused to obey his order to leave the building).[10] As noted, the evidence does not support a reasonable inference that the plaintiff's breathing was impaired. At any rate, the Eleventh Circuit has already decided that it was "not excessive force to arrest [a] plaintiff for [a] building code violation by pushing him up against [a] wall and applying [a] chokehold to [the] unresisting plaintiff while affixing handcuffs." *Brown v. City of Huntsville*, 608 F.3d 724, 740 (11th Cir. 2010) (describing *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993)).

As noted by the defendants, (Doc. 46-1 at 11), another formulation of factors to be considered in evaluating the use of force includes "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Stephens*, 852 F.3d at 1324 (internal quotes omitted). The first two of these factors are "subsumed in [a] discussion of the *Graham* factors." *Id*. at 1324-25. As for the third, "[t]he nature and extent of physical injuries sustained by a plaintiff are relevant in determining whether the amount and type of force used by the arresting officer were excessive." *Id*. at 1325 (emphasis omitted).

The plaintiff asserts that she "suffered injuries to her back" as a result of her encounter with the defendants. (Doc. 53 at 3). She testified that her back was X-rayed a few days after the incident and that the doctor told her the X-ray revealed a pinched lumbar nerve, which he attributed to the encounter. (Doc. 53-3 at 16). The plaintiff, however, has offered no testimony from the physician, and

---

[10] Although the evidence would support the inference that this use of force occurred before Hetrick told the plaintiff she was under arrest, the plaintiff insists that Hetrick's choking of her be evaluated as part of the arrest using the *Graham* factors. (Doc. 53 at 3, 5). The Court obliges that request.

the medical records she has submitted do not support her testimony.[11] Even if her hearsay testimony is considered,[12] it does not support a determination that Hetrick applied unconstitutionally excessive force.

When the Eleventh Circuit has considered the extent of injury as supporting a constitutional violation, it has generally done so in the context of force applied against a non-threatening, non-resisting suspect or citizen. *See, e.g., Stephens*, 852 F.3d at 1325-26 (collecting cases). In such a situation, the degree of injury is not a significant consideration, because "[g]ratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Id*. at 1327-28 (internal quotes omitted). So long as the force employed in such a situation is more than *de minimis*, it is unconstitutional, and the extent of injury need be considered only to show that the force was not *de minimis*. *Id*. at 1327 ("[T]he amount of force used by [the defendant] in arresting [the plaintiff], which caused his severe and permanent injuries, documented by treating physicians, forecloses any de minimis argument ….").

---

[11] The radiologist interpreted the X-ray as revealing only well-maintained vertebral body heights and intervertebral disc spaces, with no fracture or subluxation. (Doc. 53-4 at 8).

[12] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). In such an event, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Id*. official commentary 2010 amendment. However, "if evidence otherwise inadmissible provoked no timely objection, it could and, if material, should be factored into a summary judgment decision." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987). This rule applies to hearsay evidence, at least if the evidence is in fact capable of being reduced to admissible form at trial. *Jones v. UPS Ground Flight*, 683 F.3d 1283, 1294 n.37 (11th Cir. 2012). The defendant has not objected to the plaintiff's evidence as hearsay, but it is unclear whether the plaintiff could reduce her hearsay evidence to admissible form by calling the physician at trial. *See Shaw v. City of Selma*, 241 F. Supp. 3d 1253, 1264 (S.D. Ala. 2017) (the plaintiff could not reduce hearsay to admissible form at trial because he failed to disclose the declarant as a witness).

The plaintiff, however, was not non-threatening or non-resisting, and under those circumstances the Constitution permits a greater degree of force. "When more force is required to effect an arrest without endangering officer safety, the suspect will likely suffer more severe injury, but that alone does not make the use of that amount of force unreasonable." *Mobley*, 783 F.3d at 1355 (ruling that the plaintiff's broken nose, broken teeth, cuts and bruises did not support a constitutional violation under the circumstances presented). Even "serious injuries" will not establish liability when they "were not the result of disproportionate or excessive force, but were rather the result of objectively reasonable actions" by the defendant. *Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009). By yelling that she had a knife, by disobeying an order to leave the building, and by pulling or pushing away from the arresting officer rather than presenting her hands for handcuffing as ordered, the plaintiff ensured that more force was required to effect her arrest; that she suffered a pinched nerve as a result does not render the force employed unconstitutional.

It may (or may not) be that the plaintiff could have been safely secured with less force than the defendants employed. That, however, is not the constitutional test. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Saucier*, 533 U.S. at 209 (internal quotes omitted). It is "the perspective of a reasonable officer on the scene" that matters, and such officers are given allowance for the "tense, uncertain, and rapidly evolving" situations in which they find themselves. *Graham*, 490 U.S. at 396-97. Viewing the uncontroverted evidence through the correct legal prism, the Court cannot conclude that the defendants used more force than permitted by the Constitution.

Ultimately, however, the Court need not decide whether the defendants' conduct violated the Fourth Amendment, because the plaintiff has not met her burden of demonstrating, by resort to Supreme Court and/or Eleventh Circuit holdings predating the encounter, that no reasonable officer could have believed

the force employed by the defendants was constitutionally permissible under the circumstances. The single case on which she relies is *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008). (Doc. 53 at 6). As the plaintiff acknowledges, *Hadley* holds only that the gratuitous use of force against a suspect "while he was handcuffed and not struggling or resisting" constitutes excessive force. 526 F.3d at 1330. As discussed above, the plaintiff presented no evidence that she was handcuffed and compliant when any of the alleged force was applied.

"[Q]ualified immunity is only a defense to personal liability for monetary awards …." *Ratliff v. DeKalb County*, 62 F.3d 338, 340 n.4 (11th Cir. 1995). It therefore "may not be effectively asserted as a defense to a claim for declaratory or injunctive relief," *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995), or in defense of an official-capacity claim. *Bruce v. Beary*, 498 F.3d 1232, 1249 n. 33 (11th Cir. 2007). The plaintiff demands damages but no declaratory or injunctive relief, (Doc. 20 at 3), and she asserts no official-capacity claim. Qualified immunity is thus a complete defense.

Because the defendants have established that they acted within their discretionary authority, and because the plaintiff has not identified any Supreme Court or Eleventh Circuit holding that would lead every reasonable officer in the circumstances to understand that the force employed was unconstitutional, the defendants are entitled to qualified immunity from the plaintiff's excessive force claim.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is **granted**. Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 6th day of October, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE